PIONEER TOW LINE (BOWAS v.). See Case No. 1,713.

---

## Case No. 11,179.

### PIPER v. BALDY.

[10 N. B. R. 517;[1] 10 Phila. 247; 31 Leg. Int. 316; 22 Pittsb. Leg. J. 29.]

Circuit Court, W. D. Pennsylvania. June 9, 1874.

BANKRUPTCY—JUDGMENT ENTERED ON JUDGMENT NOTE GIVEN BEFORE ADJUDICATION.

Judgment notes given long before the judgment debtor was adjudged a bankrupt, and just previous to bankruptcy, to secure loans of money, and given at the times the money was advanced, are valid; and judgments entered up on such notes within a short time before the filing of the petition in bankruptcy, will not be set aside by the bankrupt court. Bill dismissed with costs.

[Cited in brief in McCormick v. Buckner, Case No. 8,718.]

[This was a bill by Edwin L. Piper, assignee of Levi Berger, a bankrupt, against E. H. Baldy, to set aside certain judgments obtained by the said Baldy against the bankrupt.]

STRONG, Circuit Justice. The object of this bill is to set aside eleven judgments obtained by Edward H. Baldy, the defendant, against Levi Berger, who has been adjudged bankrupt, and the relief asked is based upon the averment that the judgments were entered in fraud of the bankrupt law [of 1867 (14 Stat. 517)]. There is very little controversy in regard to the facts. It appears by the evidence, as well as by the pleadings, that the bankrupt for several years prior to his bankruptcy, carried on business as a builder and lumberman at Danville, in the county of Montour; and in addition to this he was the lessee of a planing-mill in the city of Williamsport during part of the years 1873 and 1874. He bought and sold lumber, and ran a planing-mill at Danville; also at various times during the years he was thus in business, he borrowed from Baldy, the defendant, different sums of money, giving at the time each loan was made a bill single for the sum borrowed, containing a confession of judgment for the debt and interest. The first of these bills was dated April 6, 1869. Three others were given in the same year, five others in the year 1870, one in 1872, and the last, February 6, 1873. Though each of them contained a confession of judgment, no judgment was entered on the record of the court of common pleas until June 26, 1873, thirty-three days before Berger was adjudged a bankrupt. When the petition was filed does not appear. Then the judgments were entered in the common pleas, at the instance of Baldy, without any agency of the debtor, so far as it appears, and without his knowledge. The entry was made in vir-

---

[1] [Reprinted from 10 N. B. R. by permission.]

tue of an act of the state legislature, enacted February 24, 1806, which empowers the prothonotary of any court of record, on the application of any person, being the original holder (or assignee of such holder) of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney-at-law or other person to confess judgment, to enter judgment against the person or persons who executed the same, without the agency of an attorney or declaration filed.

. Such are the circumstances preceding and attending the entry of the judgments, so far as it is now necessary to state them; and the question to be answered is whether they exhibit a case which would justify me in declaring that the judgments were entered in violation of the letter or spirit of the bankrupt act? and clearly, if they were, it must be because of the provisions of the 35th section of that act. Those provisions are, that "if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge or assignment, transfer or conveyance, or to be benefited thereby, or by such attachment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void." I think it quite clear this provision has reference to payments, pledges, assignments, transfers, conveyances, or attachments made to satisfy or secure an antecedently existing debt or liability, and not to debts incurred for which a full consideration was received by the debtor when he gave the pledge or transfer, etc. In the latter cases nothing is withdrawn from the general creditors. The man who borrows money, and gives at the time of the loan a security for the repayment, does no act which can be hurtful to others having claims upon him; and I cannot think the bankrupt act intended to make such a transaction unlawful: so it has been substantially decided in Tiffany v. Boatman's Sav. Inst. [18 Wall. (85 U. S.) 375]. There it was said: "The preference at which the law is directed can only arise in case of an antecedent debt. To secure such a debt would be a fraud on the act, as it would work an unequal distribution of the bankrupt's property, and therefore the debtor and creditor are alike prohibited from giving or receiving any security for a debt already incurred, if the creditor has good reason to believe the debtor to be insolvent. But the giving of securities when the debt is created is not within the law;

and if the transaction be free from fraud in fact, the party who loans the money can retain them until the debt is paid." It is unnecessary to quote the other clause of the 35th section of the act, known as the "Six-Months Clause"; for it is not claimed, nor indeed could it be, that the present case is affected by it.

Now it is to be observed that all the loans made by the defendant to the bankrupt, except one, and all the confessions of judgment except one, were made more than nine months prior to the adjudication of bankruptcy. The exception is of the loan and confession, dated February 6, 1873. The confessions of judgment were all given to secure debts contracted at the time they were given—loans then made to the debtor. It is true the entries of the judgments on the records of the court of common pleas were not made until June 26, 1873. Those entries, however, were not acts of the bankrupt. When they were made he was neither a party nor a privy to them in any such sense, I think, as to render them fraudulent because of collusion with his creditors. To avoid judgments obtained for debts of a bankrupt, under the clause of the thirty-fifth section of the bankrupt act quoted, it is necessary that several things should appear. Not only must the debtor have been insolvent, or contemplating insolvency, but he must have given the judgment, or procured it to be given, within four months before the filing of the petition by or against him, with a view to give a preference, and the creditor must have had reasonable cause to believe that the debtor was insolvent, and that the judgment was given in fraud of the provisions of the act. It seems to me quite evident that the view or intent to give a preference contemplated by the act, must be an intent existing in the mind of the debtor when the preference is attempted, that is, in case of a judgment when the judgment is entered. But how can a debtor be said to intend a wrongful preference at the time a judgment is obtained against him, when he is ignorant of the fact that a judgment is being obtained? That he may, years before, have contemplated the possibility that a judgment might thereafter be obtained against him; that years before he may have given a warrant of attorney to confess a judgment, or by his own confession, as in this case, have put it in the power of his creditor to obtain a judgment is, in my opinion, wholly unimportant to the inquiry, whether he had in view an unlawful preference within four months next prior to his bankruptcy? For it is a fraudulent intent existing within those four months which the act of congress has in view. I cannot, therefore, assent to the doctrine which is said to have been recognized in some cases, that if a debtor has given a bond with a warrant of attorney to confess a judgment, and afterwards, within four months prior to the filing of a petition in bankruptcy, by or against him, a judgment is entered by

virtue of the warrant, he must be regarded as having given the judgment, having in view at the time of its entry a preference for the judgment creditor. I agree that such a confession by his attorney is, in contemplation of law, his act, but I deny that it warrants any inference of an intended fraud on the bankrupt law. The present, however, is not such a case. The judgments were not entered by virtue of any warrant of attorney. They were confessed by the debtor when the loans were made, and the subsequent entries of record were made, not by authority of the bankrupt, but under the sanction of an act of assembly. Neither directly nor indirectly, therefore, was any act done by the bankrupt within four months next prior to his bankruptcy evidence of an intent to give a preference. For this reason, then, if for no other, I must hold there is no evidence before me that Berger had in view, on the 26th of June, 1873, when the eleven judgments were entered of record in the common pleas, a preference of Baldy over other creditors; hence the case is not covered by the 35th section of the act of congress. Nor do I think there is any satisfactory evidence that the defendant either knew or had reasonable cause to believe, that Berger was insolvent at the time the judgments were entered of record, or at any time prior to the entry, that Berger was insolvent in June, 1873, although the fact became quite manifest afterwards. But I do not discover any reason Baldy had for suspecting his solvency, until after the judgments were entered; none, indeed, until later judgments in favor of others were recorded. Berger was carrying on his business as usual, and that business was very large, amounting, as the proof is, to two hundred thousand dollars, between July, 1872, and July, 1873; there is no evidence that his entire solvency was doubted by any one until after the Baldy judgments were put on record. The Danville Bank continued to discount for him large amounts of his business paper until after July 1, 1873; and the bank in Danville did likewise, and in addition gave him accommodation discounts; and that Baldy knew, or even suspected, he was insolvent is incredible, in view of the facts that he suffered the judgments to remain unentered so long, and did not cause executions to be issued after they were entered, though the greater part of the debtor's property was personalty, and his real estate was greatly insufficient to satisfy the debt. No doubt the effect of the entry of the judgments was to precipitate Berger's failure and the stoppage of his business. But I have sought in vain for any evidence of apparent or probable insolvency before the entry. It has been argued that the loans were part due, and that this should have awakened suspicion in the defendant's mind. It would have some importance if the loans were evidenced by commercial paper, but I regard it as of no significance in view of the well-known habits of business in the interior of Pennsylvania.

It is contended also, that the defendant was the attorney of the bankrupt; he had made some collections for him, a very few, and had drafted some mortgages and agreements, but it does not appear that he was a confidential adviser at all, certainly not to such an extent as to warrant the conclusion that he must have known, or might have known, the debtor's pecuniary condition, or the extent of his resources and liabilities, on the whole, therefore, without regard to anything contained in the act of June 22, 1874 [18 Stat. 178], amendatory of the general bankrupt act.

I should be of opinion no case had been presented to justify my holding any of the eleven judgments of the defendant against the bankrupt to be invalid. But the amendatory act, it appears to me, relieves the case from all possibility of debate. Its 11th section enacts, that "nothing in the 35th section of the general act shall be construed to invalidate any loan of actual value, or the security therefor made in good faith, or a security taken in good faith on the occasion of the making of such loan." It is conceded the loans of money made by the defendant were made in good faith. and that the confessions of judgment in the bills single were taken in good faith when the loans were made. Beyond doubt, these confessions authorized the entry of the judgments at the time they were entered of record, unless the authority was invalidated by the 35th section of the bankrupt act; that it was not the amendment determines. The bill must therefore be dismissed with costs.